UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANNETTE WACHA,

                          Plaintiff,

v.                                                          1:19-CV-0372
                                                            (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC     ELIZABETH HAUNGS, ESQ.
  Counsel for Plaintiff                              KENNETH HILLER, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                   ANNE ZEIGLER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   FRANCIS TANKARD, ESQ.
  Counsel for Defendant                            MEGHAN MCEVOY, ESQ.
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

          The parties consented, in accordance with a Standing Order, to proceed before

the undersigned.  (Dkt. No. 22.)  The court has jurisdiction over this matter pursuant

to 42 U.S.C. § 405(g).  The matter is presently before the court on the parties' cross-

motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure.  For the reasons discussed below, Plaintiff's motion is denied, and the

Commissioner's motion is granted.

## I.      RELEVANT BACKGROUND

A.    **Factual Background**

Plaintiff was born in 1972.  (T. 100.)  She completed some college.  (T. 208.)

Generally, Plaintiff's alleged disability consists of post-traumatic stress disorder

("PTSD"), depression, migraines, and anxiety.  (T. 100.)  Her alleged disability onset

date is December 31, 2010.  (*Id*.)  Her date last insured is December 31, 2015.  (*Id*.)

Her past relevant work consists of compliance analyst.  (T. 208.)

B.    **Procedural History**

On October 14, 2014, Plaintiff applied for Disability Insurance Benefits ("SSD")

under Title II of the Social Security Act.  (T. 195.)  Plaintiff's application was initially

denied, after which she timely requested a hearing before an Administrative Law Judge

("the ALJ").  On June 13, 2016, Plaintiff appeared before the ALJ, Stephen Cordovani.

(T. 43-91.)  On June 27, 2016, ALJ Cordovani issued a written decision finding Plaintiff

not disabled under the Social Security Act.  (T. 11-35.)  On November 8, 2016, the AC

denied Plaintiff's request for review, rendering the ALJ's decision the final decision of

the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this

Court.  On November 3, 2017, the parties stipulated to remand Plaintiff's case for further

proceedings.  (T. 1888-1890.)  On February 27, 2018, the AC issued a Notice of Order

of Appeals Council Remanding Case to Administrative Law Judge.  (T. 1891-1895.)  On

October 15, 2018, Plaintiff again appeared before ALJ Cordovani.  (T. 1783-1842.)  On

November 19, 2018, ALJ Cordovani issued a written decision finding Plaintiff not

disabled under the Social Security Act.  (T. 1754-1782.)  Plaintiff again timely sought

judicial review in this Court.

C.    **The ALJ's Decision**

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 1759-1776.)  First, the ALJ found Plaintiff met the insured status requirements through December 31, 2015 and Plaintiff had not engaged in substantial gainful activity since December 31, 2010.  (*Id.*)  Second, the ALJ found Plaintiff had the severe impairments of: right shoulder cross syndrome; obesity; migraine headaches; PTSD with anxiety attacks; bipolar disorder; and major depressive disorder.  (*Id.*)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 1761.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b); except:

> no overhead reaching with the right non-dominant arm; frequent push/pull with the right arm; can understand, remember and carry out simple instructions and tasks; no supervisory duties, no independent, decision-making, minimal changes in work routine and processes; and occasional interaction with supervisors, coworkers, and the general public.

(T. 1763.)[1]  Fifth, the ALJ determined Plaintiff was unable to perform her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 1774-1775.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

---

[1]      Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 404.1567(b).

Plaintiff makes four separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to properly evaluate whether or not Plaintiff met Listing 12.15.  (Dkt. No. 8 at 22-29.)  Second, Plaintiff argues the ALJ ignored the Compensation and Pension examination performed by Sandra Jensen, Psychologist.  (*Id*. at 29-32.)  Third, Plaintiff argues the ALJ failed to discuss how Plaintiff could maintain a regular work schedule despite the need for hundreds of mental health treatment appointments throughout the relevant period.  (*Id*. at 32-35.)  Fourth, and lastly, Plaintiff argues the ALJ effaced a fundamental misunderstanding of PTSD and military sexual trauma in his treatment of Plaintiff's difficulties interacting with men. (*Id*. at 35-40.)  Plaintiff also filed a reply in which she reiterated her original arguments. (Dkt. No. 21.)

### B.    Defendant's Arguments

In response, Defendant makes four arguments.  First, Defendant argues substantial evidence supported the ALJ's step three findings.  (Dkt. No. 20 at 25-31.) Second, Defendant argues remand is not required for further consideration of Dr. Jensen's statement.  (*Id*. at 31-34.)  Third, Defendant argues the ALJ appropriately evaluated Plaintiff's ability to maintain a regular work schedule.  (*Id*. at 34-35.)  Fourth, and lastly, Defendant argues the ALJ appropriately evaluated Plaintiff's PTSD and fully accounted for her limitations in relating with others.  (*Id*. at 35-41.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v.*

*Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In

5

other words, this Court must afford the Commissioner's determination considerable

deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a *de novo* review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine

whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §

404.1520.  The Supreme Court has recognized the validity of this sequential evaluation

process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The

five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of
> impairments; (3) whether the impairment meets or equals the severity of the
> specified impairments in the Listing of Impairments; (4) based on a 'residual
> functional capacity' assessment, whether the claimant can perform any of
> his or her past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the claimant
> can perform given the claimant's residual functional capacity, age,
> education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.    ANALYSIS

### A.     Listing 12.15

Plaintiff argues the ALJ's reasoning for Plaintiff not meeting the C criteria of

Listing 12.15 was based on an incorrect reading of the Listing.  (Dkt. No. 8 at 22-29.)

Plaintiff argues this was harmful error because if the ALJ had properly read the listing,

Plaintiff's PTSD would meet the C criteria and be found disabled.  (*Id*.)

In general, if an ALJ determines a plaintiff has a severe mental or physical impairment at step two of the disability evaluation procedure, the ALJ must then determine whether the impairment meets the criteria of any impairment listed in Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii)(d).  The impairments listed in Appendix 1 are considered severe enough to prevent a plaintiff from doing any gainful activity. *Id.* § 404.1525(a).  If a plaintiff's impairment, or combination of impairments, matches one listed in Appendix 1, and satisfies the duration requirement in 20 C.F.R. § 404.1509, then the ALJ should generally find the plaintiff disabled without considering the plaintiff's age, education, and work experience.  *Id.* § 404.1520(d).

To match an impairment listed in Appendix 1, a plaintiff's impairment "must meet all of the specified medical criteria" of a listing.  *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 404 Subpt. P, App. 1).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Id.*  "Plaintiff has the burden of proof at step three to show that [his] impairments meet or medically equal a Listing."  *Rockwood v. Astrue,* 614 F.Supp.2d 252, 272 (N.D.N.Y. 2009), *adopted,* 614 F.Supp.2d 252 (N.D.N.Y. 2009).

For the reasons outlined herein, the ALJ did not misstate the requirements of Listing 12.15, the ALJ's step three determination was supported by substantial evidence, and Plaintiff fails to show that her impairment met the Listing 12.15 paragraph C section 2 criteria.

Listing 12.15 addresses trauma- and stressor-related disorders.  Listing 12.15 requires a plaintiff to meet the requirements of subparts A and B, or A and C, of that Listing by showing:

A. Medical documentation of all of the following:

1. Exposure to actual or threatened death, serious injury, or violence;
2. Subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks);
3. Avoidance of external reminders of the event;
4. Disturbance in mood and behavior; and
5. Increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance).

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

1. Understand, remember, or apply information (see 12.00E1).
2. Interact with others (see 12.00E2).
3. Concentrate, persist, or maintain pace (see 12.00E3).
4. Adapt or manage oneself (see 12.00E4).

OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. § 404, Subpart P, Appendix 1, Part 1, § 12.15.

The ALJ did not specifically discuss the paragraph A criteria in his step three analysis. (T. 1761-1763.) Any error in failing to discuss the paragraph A criteria would be harmless because substantial evidence supported the ALJ's determination Plaintiff did not meet the paragraph B or the paragraph C criteria.

The ALJ concluded Plaintiff's PTSD did not meet the paragraph B criteria. (T. 1761-1762.) The ALJ determined Plaintiff had moderate limitation in the area of

8

understanding, remembering, or applying information.  (T. 1761.)  He determined

Plaintiff had moderate limitation in the area of interacting with others.  (T. 1762.)  He

determined Plaintiff had moderate limitation in the area of concentrating, persisting, or

maintaining pace.  (*Id*.)  And lastly, he determined Plaintiff had mild limitation in the area

of adapting or managing oneself.  (T. 1763.)

The ALJ also concluded Plaintiff's PTSD did not meet the paragraph C criteria.

(T. 1763.)  In making his determination the ALJ reasoned the evidence failed to

establish "a serious and persistent mental disorder requiring a highly structured setting

and [Plaintiff] does not have a minimal capacity to adapt to changes in her environment

or demands that are not already part of her daily life."  (*Id*.)

Plaintiff argues, the ALJ "blatantly misquoted" the Listing because the "newly

amended listing no longer requires a highly structured setting to meet this listing."  (Dkt.

No. 8 at 25.)  Plaintiff's argument is misplaced.

First, as stated by Defendant, Listing 12.15 is an entirely new Listing, effective

January 17, 2017, and therefore no requirements could have been removed.  (Dkt. No.

20 at 26.)[2]  Second, paragraph C section 1 of Listing 12.15 does require: "[m]edical

treatment, mental health therapy, psychosocial support(s), or *a highly structured*

*setting(s)* that is ongoing and that diminishes the symptoms and signs of your mental

disorder."  20 C.F.R. § 404, Subpart P, Appendix 1, Part 1, § 12.15 (emphasis added).

Although the ALJ did not quote the entirety of paragraph C of the Listing, his statement

---

[2]         Before Listing 12.15, PTSD was evaluated under Listing 12.06 which encompassed
anxiety related disorders.  Defendant's further assertion, Listing 12.06 did not require a highly structured
setting, is incorrect.  (Dkt. No. 20 at 26.)  Paragraph "C" of Listing 12.06 required, in part, the "complete
inability to function independently outside the area of one's home."  POMS,
https://secure.ssa.gov/apps10/poms.nsf/lnx/0434132011.  Such a requirement constitutes a highly
structured setting.  *Id*.

that Plaintiff did not meet the requirements, in part, because she did not require highly structured setting, was not a blatant misquote of the Listing.

In addition, any error in determining Plaintiff did not meet the criteria of Listing 12.15 paragraph C section 1 would be harmless, because to meet the requirements of paragraph C, Plaintiff must meet the criteria of both sections 1 and 2.  *See* 20 C.F.R. § 404, Subpart P, Appendix 1, Part 1, § 12.15; *see Sullivan,* 493 U.S. at 530 (plaintiff's impairment "must meet all of the specified medical criteria" of a listing).  Substantial evidence supported the ALJ's determination Plaintiff did not meet the criteria of paragraph C section 2.

The ALJ provided sufficient analysis at step three to support his determination Plaintiff's PTSD did not meet the paragraph C section 2 requirement.  (T. 1763.)  The ALJ summarized paragraph C section 2 of Listing 12.15, which requires a plaintiff "have minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] daily life."  (*Id.*)  The ALJ concluded Plaintiff did "not have a minimal capacity to adapt to changes in her environment or demands that are not already part of her daily life."  (*Id.*)

Plaintiff argues the ALJ erred in his determination, that Plaintiff's ability to perform various activities showed her capacity to adapt to changes in her environment or demands that are not already part of her life.  (Dkt. No. 8 at 26-27.)  Plaintiff asserts the activities cited by the ALJ were part of her everyday lift and therefore not applicable. (*Id.*)

The Listings provide the following information:

[t]he criterion in [Listing 12.15 paragraph] C2 is satisfied when the evidence shows that, despite your diminished symptoms and signs, you have

achieved only marginal adjustment. "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

Substantial evidence in the record supported the ALJ's determination Plaintiff's impairment does not meet the paragraph C section 2 criteria.  In his step three determination, the ALJ concluded Plaintiff showed the ability to maintain a relationship, go out to eat, interrelate with friends and family, remain stable with mental health care and use medication, take public transportation, drive and teach youth fencing and music.  (T. 1763.)  Elsewhere in his determination, the ALJ relied on Plaintiff's ability to travel for social events like an out of state craft show and camping trip and attend other outings.  (T. 1765.)  There is no indication in the record that such activities led to exacerbation of her symptoms or deterioration in functioning as required by the Listing.

Overall, the ALJ properly evaluated Plaintiff's PTSD under Listing 12.15 and substantial evidence supported the ALJ's determination Plaintiff's impairment did not meet all the criteria of the Listing.

### B.    Medical Source Opinion of Sandra Jensen, Psychologist

Plaintiff argues the ALJ committed legal error because he "completely ignored" a Compensation and Pension form completed by Dr. Jensen in

December 2011.  (Dkt. No. 8 at 29-32.)  Plaintiff argues Dr. Jensen's opinion

supported other opinions in the record and overall supported greater limitations

than provided for by the ALJ in his RFC determination.  (*Id.*)

In general, the ALJ "will evaluate every medical opinion [he] receive[s]."

20 C.F.R. § 404.1527(c)[3].  However, the ALJ "is not required to discuss in depth

every piece of evidence contained in the record, so long [as] the evidence of

record permits the Court to glean the rationale of an ALJ's decision."  *Mongeur v.*

*Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (internal quotation marks omitted))

Although the ALJ did not specifically weigh Dr. Jensen's December 2011 form,

the ALJ did not "completely ignore" the opinion either and ultimately Dr. Jensen's

statement did not contradict the ALJ's findings.  *See Votee v. Comm'r of Soc.*

*Sec.,* No. 19-CV-807S, 2020 WL 3096980, at *6 (W.D.N.Y. June 11, 2020) (ALJ

did not err in failing to specifically discuss VA Compensation and Pension report

because ALJ not required to discuss every piece of evidence and report did not

contradict ALJ's findings).

In December 2011, Dr. Jensen completed a form on behalf of the VA.

When asked to pick a statement that best summarized Plaintiff's level of

occupational and social impairment, Dr. Jensen checked, "[o]ccupational and

social impairment with deficiencies in most areas, such as work, school, family

relations, judgment, thinking and/or mood."  (T. 419.)  Dr. Jensen checked criteria

---

[3]     Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs").  Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

used for establishing PTSD diagnosis.  (T. 421-422.)  When asked to check symptoms that apply to Plaintiff's diagnosis, Dr. Jensen checked: depressed mood; anxiety; chronic sleep impairment; mild memory loss; circumstantial, circumlocutory or stereotyped speech; difficulty in establishing and maintaining effective work and social relationships; suicidal ideation; impaired impulse control, such as unprovoked irritability with periods of violence; grossly inappropriate behavior; neglect of personal appearance and hygiene; and intermittent inability to perform activities of daily living, including maintenance of minimal personal hygiene.  (T. 423-424.)

Dr. Jensen stated:

[i]t is the opinion of this examiner that [Plaintiff's] ability to manage full-time employment, as well as her ability to maintain gainful employment, has been significantly impacted by her problems with irritability and difficulty concentrating, as well as her sense of problems with social gatherings and estrangement from others.  In addition, her mood disorder more likely than not would also contribute to difficulties in her maintaining gainful employment.  However, throughout this examination there was nothing that would indicate, either by notes or by [Plaintiff's] reports, that she would be unable to maintain her employment.

(T. 424.)

Dr. Jensen also examined Plaintiff at the request of the Social Security Administration on March 9, 2011.  (T. 276-280.)  Dr. Jensen observed Plaintiff was cooperative; her speech was prosodic; her thought processes were coherent and goal directed; her affect was flat; her mood was dysthymic; her attention and concentration were intact; her recent and remote memory skills were intact; her cognitive functioning was likely in the above average range; and her insight and judgement were good.  (T. 277-278.)  Dr. Jensen opined Plaintiff could follow and

understand simple directions and instructions; perform simple tasks independently; learn new tasks; and perform complex tasks independently within normal limits.  (T. 279.)  She opined Plaintiff's ability to maintain attention and concertation and maintain a regular schedule was mildly impaired.  (T. 280.)  She opined Plaintiff's ability to make appropriate decisions, relate adequately with others, and appropriately deal with stress would be moderately impaired.  (*Id*.)

First, contrary to Plaintiff's assertion, the ALJ did not "completely ignore" Dr. Jensen's December 2011 statement.  (Dkt. No. 8 at 29.)  Although the ALJ did not specifically summarize and weigh Dr. Jensen's December statement, the ALJ referred to the statement in his evaluation of treating physician, Allison McGuerty's opinion.  (T. 1771.)  Indeed, Dr. McGuerty completed a one-page form in connection with Plaintiff's request to discharge a federal loan based on her disability status.  (T. 1369.)  When asked to provide specific functional limitations, Dr. McGuerty wrote, "as per evaluation for disability at this VAMC 12/23/11, [Plaintiff] is severely impaired in all aspects of social and occupational functioning."  (*Id*.)  Therefore, Dr. McGuerty referred the reader to Dr. Jensen's form and essentially adopted her findings.

As outlined above, ALJ specifically noted Dr McGuerty's statement adopting Dr. Jensen's statement Plaintiff was "severely impaired in all aspects of social and occupational functioning."  (T. 1771.)  The ALJ concluded an impairment in social and occupational functioning was "consistent with the overall record and with the opinion of essentially every other treating or examining medical source."  (*Id*.)  The ALJ noted the statement failed to contain the extent

of the social and occupational limitations.  (*Id*.)  And lastly, the ALJ concluded the opinion was not "necessarily inconsistent" with his RFC determination.  (T. 1772.)

Indeed, Dr. Jensen's statement that Plaintiff would have "[o]ccupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood" was adequately reflected in the ALJ's RFC determination limiting Plaintiff to simple routine work and additional social restrictions. *See Votee*, 2020 WL 3096980, at *6 (general statement that plaintiff would experience a "severe level of occupational impairment" was addressed by the restrictions in the ALJ's RFC determination).

The ALJ also summarized and weighed Dr. Jensen's March 2011 opinion. (T. 1772.)  The ALJ afforded her opinion "great weight," reasoning she examined Plaintiff, had program knowledge, and her opinion was consistent with other medical opinions in the record, and consistent with medical records from the VA. (T. 1772-1773.) Therefore, Plaintiff's argument, that the ALJ committed legal error in "completely ignoring" Dr. Jensen's December 2011 opinion is without merit.

Plaintiff also argues Dr. Jensen's opinion supports the opinions of Plaintiff's treating providers.  (Dkt. No. 8 at 31.)  Plaintiff cites to Dr. McGuerty's opinion and the statement by Nancy Deganis, LCSW.  (*Id*.)  However, Dr. McGuerty's opinion essentially deferred to Dr. Jensen's statement and, as outlined above, was not inconsistent with the RFC.  Further, Ms. Deganis opined Plaintiff "was unable to work."  (T. 1394.)  Ms. Deganis's statement is on an issue reserved to the Commissioner.  20 C.F.R. § 404.1527(d) (the ultimate finding of

whether plaintiff was disabled and cannot work is "reserved to the Commissioner"). Further, Dr. Jensen opined, in both March and December of 2011, despite limitations Plaintiff's was capable of work. (T. 279, 424.) Therefore, Plaintiff's argument fails.

Overall, the ALJ properly assessed the opinion evidence in the record.

### C.    Maintain a Regular Schedule

Plaintiff argues the ALJ failed to reconcile Ms. Deganis's statement Plaintiff would miss more than four days per month due to treatment or symptoms with his RFC determination Plaintiff could maintain a regular schedule. (Dkt. No. 8 at 32.) For the reasons outlined below, substantial evidence supported the ALJ's determination Plaintiff could maintain a schedule and perform substantial gainful activity.

The ALJ afforded Ms. Deganis's May 2016 assessment little weight. (T. 1772.) The ALJ reasoned Ms. Deganis is not an acceptable medical source, her opinion was inconsistent with other medical opinions in the record, and the opinion was inconsistent with Plaintiff's level of activity. (*Id.*) Indeed, as stated by Defendant, the ALJ appropriately gave little weight to Ms. Deganis's statement, finding that her non-acceptable medical source statement was inconsistent with other medical opinion evidence and with Plaintiff's daily activities. (Dkt. No. 20 at 34.)

The record as a whole supported the ALJ's determination. In completing an RFC form, Ms. Deganis declined to assess Plaintiff's specific functional abilities; however, she indicated Plaintiff would be absent more than four times

per month and was unable to engage in full-time employment.  (T. 1398.)  Ms. Deganis's statement conflicted with Dr. Jensen's March 2011 opinion Plaintiff had mild limitations in her ability to maintain a regular schedule.  (T. 279.) Consultative examiners, Christine Ransom, Ph.D. and Susan Santarpia, Ph.D. both opined Plaintiff had no limitations in her ability to maintain a regular schedule.  (T. 729, 1357.)  The ALJ also relied on Plaintiff's activities such as attending camp outs, veteran's outings, out of state craft shows, helping to care for her boyfriend's special need's child, and other activities.  (T. 1774.)

Overall, as stated by the ALJ, other medical sources opined Plaintiff was capable of full time substantial gainful employment with additional non-exertional limitations. *See Pollino v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 428, 435 (W.D.N.Y. 2019) ("The ALJ properly rejected Dr. Spurling's opinions relating to Plaintiff's ability to perform full-time work and absences as unsupported by the record.").  Therefore, the ALJ properly concluded Ms. Deganis's opinion, Plaintiff would miss up to four days per month, conflicted with other substantial evidence in the record.

> **D.    Ability to Relate to Others**

Plaintiff argues the ALJ failed to properly assess Plaintiff's limitations in interacting with men in supervisory roles.  (Dkt. No. 8 at 35-40.)  Plaintiff argues the ALJ erred in concluding Plaintiff's ability to interact with men in everyday social situations equated to her ability to interact with men in supervisory roles. (*Id*.)

To be sure, remand may be warranted where an ALJ fails to provide any explanation for adopting portions of an opinion and rejecting other portions. *Laware v. Colvin*, 290 F. Supp. 3d 182, 186 (W.D.N.Y. 2017) (ALJ failed to sufficiently explain his rationale for declining to credit portions of treating physician's opinion while affording the opinion great weight); *see Casey v. Comm'r of Soc. Sec.*, No. 7:13-CV-0947, 2015 WL 5512602, at *13 (N.D.N.Y. Sept. 15, 2015) (remand necessary where ALJ's RFC incorporated all limitations opined by non-acceptable treating source except her opinion plaintiff could not work with a male supervisor without explanation).  In the current matter, the AC remanded Plaintiff's claim for further clarification of Plaintiff's ability to interact with supervisors.  (T. 1893.)  Here, the ALJ's RFC determination limiting Plaintiff to occasional interaction with supervisors was proper and supported by substantial evidence.

In his written decision, the ALJ recognized Plaintiff was the victim of military sexual trauma and severe hazing by her military unit.  (T. 1762, 1767-1768, 1770.)  The ALJ acknowledged and discussed Plaintiff's allegations of difficulty dealing with males, particularly males in authority, due to her trauma.  (T. 1762, 1770.)  The ALJ properly considered Plaintiff's allegations concerning male authority figures and substantial evidence supported the ALJ's RFC determination limiting Plaintiff to occasional interaction with supervisors.

Here, no medical source opined Plaintiff could not work with male supervisors.  Dr. Jensen opined Plaintiff was moderately limited in her ability to relate adequately with others and deal appropriately with stress.  (T. 279.)  Dr.

Andrews opined Plaintiff had moderate difficulties in maintaining social functioning.  (T. 295.)  Dr. Jensen also opined, "there was nothing that would indicate, either by notes or by [Plaintiff's] reports, that she would be unable to maintain her employment."  (T. 424.)  Dr. Ransom opined Plaintiff was mildly limited in her ability to relate adequately with others and appropriately deal with stress.  (T. 729.)  Dr. Santarpia opined Plaintiff was able to relate adequately with others and appropriately deal with stress.  (T. 1357-1358.)  The ALJ also relied on Plaintiff's activities during which she interacted with people of both sexes without problems.  (T. 1762-1767, 1769-1770, 1772-1774.)  The ALJ specifically noted Plaintiff was able to work successfully with a male physical therapist, participate in groups which have rules of order and both male and female authority figures.  (T. 1762.)

After a thorough evaluation of the medical record and Plaintiff's testimony, the ALJ concluded a limitation to occasional contact with supervisors, co-workers and the general public fully accounted for her "professed problems with males and authority figures."  (T. 1762); *see Leazenby v. Colvin*, 654 F. App'x 301, 303 (9th Cir. 2016) (ALJ's RFC assessment limiting plaintiff to occasional interaction with supervisors and co-workers "fairly encompassed" examining physician's observation plaintiff "would probably have difficulty if a supervisor was a male").

Overall, ALJ discussed Plaintiff's symptomology and provided sufficient analysis to support his mental RFC conclusion.  Although Plaintiff reported increased symptoms of PTSD with male authority figures, the ALJ's RFC limitation to only occasional contact with supervisors was supported by the

medical opinion evidence in the record which indicated Plaintiff would have at most moderate social limitations.  Therefore, the ALJ's RFC determination was proper and supported by substantial evidence in the record.

**ACCORDINGLY**, it is

ORDERED that Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is **DENIED**; and it is further

ORDERED that Defendant's motion for judgment on the pleadings (Dkt. No. 20) is **GRANTED**; and it is further

ORDERED that Defendant's unfavorable determination is **AFFIRMED**; and it is further

ORDERED that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:        June 18, 2020

William B. Mitchell Carter
U.S. Magistrate Judge